IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

N.T.,

    Plaintiff,

v.                                              Case No. 19-1028-JWB

TACO BELL CORP.; BORDER MANAGEMENT;
JPM, INC.; JPM CAMP, INC.; and
PATRICK VESTAL,

    Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant Taco Bell Corporation's ("TBC") motion to dismiss for failure to state a claim. (Doc. 17.) The motion is fully briefed and is ripe for decision. (Docs. 18, 20, 22, 26.) For the reasons stated herein, TBC's motion to dismiss (Doc. 17) is GRANTED.

**I. Facts**

The following allegations are taken from Plaintiff's first amended complaint ("the complaint.") (Doc. 13.) Plaintiff N.T. was sixteen years old at the time of the events described. (*Id.* at 2.) In the Spring of 2017, Plaintiff began working at a Taco Bell restaurant at 2408 E. Kansas in Garden City, Kansas (hereinafter "the Taco Bell.") Defendants Border Management, JPM Inc., and JPM Camp Inc.[1] are the owners or operators of the Taco Bell. (*Id.*) Defendant Patrick Vestal was employed at the Taco Bell. On the day Plaintiff interviewed for a job at the

---

[1] The complaint actually identifies the three owners/operators as Border Management, JPM Inc., and (again) "JPM Inc." (Doc. 13 at 2.) The balance of the complaint indicates that this third reference was supposed to be to JPM Camp Inc.

Taco Bell, Vestal allegedly made inappropriate sexual comments to Plaintiff and became more aggressive when she asked him to stop. During Plaintiff's subsequent employment at Taco Bell, Vestal made sexually inappropriate comments and grabbed Plaintiff in a sexual manner. Plaintiff reported Vestal's behavior to Gloria Salas, whom the complaint identifies as "a manager for the Taco Bell Defendants."[2] (*Id.* at 6.) Salas asked Vestal to leave Plaintiff alone, but no other action was taken. (*Id.* at 7.) Vestal thereafter allegedly continued to make sexual comments to Plaintiff, grabbed her, and asked Plaintiff to engage in sexual intercourse. Plaintiff reported the conduct for a second time to Salas, but Salas took no action against Vestal. When Plaintiff continued to report Vestal's conduct, Salas allegedly told her she "was getting tired" of Plaintiff reporting the harassment. (*Id.* at 8.) In May 2017, when Plaintiff was instructed to take out the trash with Vestal, Vestal allegedly grabbed, kissed, and sexually fondled Plaintiff without her consent, telling her to "shut up" when she denied his advances. (*Id.*) After Salas learned of the alleged assault, Plaintiff spoke to her and expressed concern over returning to work due to Vestal's actions and the hostile work environment she faced. Salas's response was allegedly to demand that Plaintiff give three weeks' notice before quitting. Plaintiff was terminated on May 29, 2017, for "job abandonment." (*Id.* at 10.)

The first six counts of the complaint assert claims for sexual harassment and sex discrimination under Title VII against Border Management, JPM Inc., and JPM Camp Inc., as well as various state law tort claims against these same Defendants and against Vestal.

Count VII of the complaint alleges a claim of negligence against Defendant TBC. (Doc. 13 at 26.) According to the complaint, TBC "develops, operates and franchises a worldwide system of Taco Bell restaurants, which prepare, package and sell a menu of food items." (*Id.* at 27.) TBC

---

[2] The complaint does not specifically identify "the Taco Bell Defendants," although the term apparently refers to Border Management, JPM Inc., and JPM Camp, Inc. *See* Doc. 13 at 20, ¶ 145.

"markets and sells Taco Bell restaurant franchises to the public," and in doing so "requires the franchisees to follow certain operational policies and procedures." (*Id.*) Plaintiff alleges that TBC "has been aware of the risk of sexual assault being committed in Taco Bell restaurants since at least 2009," but "has failed to institute any policies and procedures its franchisees are required to follow, which seek to prevent sexual assault in the workplace" despite "knowing that it continues to cause harm to Taco Bell restaurant employees." (*Id.*) Plaintiff alleges that TBC has duties to provide rules regarding the operation of franchises, to ensure that the franchises are safe working environments, and to disclose the known defects and risks of operating a Taco Bell restaurant. (*Id.* at 28.) Although the complaint does not actually allege that TBC conveyed franchise rights for the Garden City Taco Bell to the Defendant owner/operators, such an inference arises from other allegations in the complaint.[3] Plaintiff alleges that TBC "breached its duties in failing to disclose the known risk of sexual assault [of employees] in Taco Bell restaurants" and thereby caused harm to Plaintiff. (*Id.*)

TBC moves to dismiss the negligence claim, arguing the allegations fail to state a claim upon which relief can be granted because TBC owed no duty to Plaintiff as a matter of law. (Doc. 18 at 1.)

## II. Motion to Dismiss Standard

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v.*

---

[3] The complaint studiously avoids any mention or discussion of a franchise agreement between TBC and the owner/operators. TBC has provided a copy of a franchise agreement (Doc. 20) with its motion to dismiss and argues the court should consider it in connection with the motion. The court declines to do so, however, as the alleged agreement is outside of the pleadings and was not incorporated into the complaint by explicit reference (although it was arguably incorporated by implicit reference.) *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (on a motion to dismiss the court can only consider exhibits attached to the complaint or that were incorporated into the complaint by reference); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) ("When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'")

3

*Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). Rule 12(b)(6) "does not require that Plaintiff establish a prima facie case in her complaint, but rather requires only that the Plaintiff allege enough factual allegations in the complaint to set forth a plausible claim." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1171–72 (10th Cir. 2015) (internal citations omitted). In the end, the issue is not whether Plaintiff will ultimately prevail, but whether Plaintiff is entitled to offer evidence to support her claims. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

**III. Analysis**

To recover for negligence in Kansas, "the plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered." *South ex rel. South v. McCarter*, 280 Kan. 85, 94, 119 P.3d 1, 8 (2005) (citations omitted.) "Whether a duty exists is a question of law." *Id.* After examining the complaint, the court concludes Plaintiff has failed to allege any facts showing that TBC owed Plaintiff a legal duty of care in connection with its franchise arrangement with the Defendant owner/operators.

Plaintiff argues TBC had "a duty to Plaintiff to sell its franchises in a manner that did not create an unreasonable risk of sexual harassment or sexual assault to the franchisee's employees." (Doc. 22 at 6.) Plaintiff does not point to any section of the Restatement or to any Kansas case finding such a legal duty under similar circumstances. This attempt to repackage Plaintiff's harassment and assault allegations as a claim for negligent design of a franchise suffers from a

number of fatal flaws, one of which is that the gravamen of the claim remains this: that Plaintiff suffered harm from the actions of a third person and TBC failed to prevent it. And as noted in *McCarter* and other Kansas cases, "[t]he prevailing rule in Kansas is that in the absence of a 'special relationship' there is no duty on a person to control the conduct of a third person to prevent harm to others." *McCarter*, 280 Kan. at 95, 119 P.3d at 8 (quoting *D.W. v. Bliss*, 279 Kan. 726, 112 P.3d 232 (2005)). The "special relationships" that can give rise to a duty to protect others from harm by third persons include common carriers and their passengers, innkeepers and their guests, and possessors of land and their invitees. *Id.*, 280 Kan. at 95, 119 P.3d at 9 (citing *Restatement (Second) of Torts* § 314A (1964)). Kansas has never held that the sale of franchise rights to another, standing alone, creates a duty to protect the employees of the franchisee. Such a duty would be contrary to the rule expressed in *McCarter* and other cases. There are of course statutory duties upon an employer to protect its employees from unlawful discrimination, but the complaint does not allege that Plaintiff was employed by TBC. Plaintiff alleges no special relationship giving rise to a common law duty on TBC's part to protect Plaintiff from sexual assault or harassment by third persons.

Plaintiff argues TBC nevertheless owed Plaintiff a duty of care because of the obligation "upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for the nonperformance of which an action lies." (Doc. 22 at 6) (quoting *McCarter*, supra.) The duty referred to is reflected in *Restatement (Second) of Torts* § 324A, which Kansas has adopted. *See McGee by and through McGee v. Chalfant*, 248 Kan. 434, 438, 806 P.2d 980, 983 (1991). It provides in part that one who undertakes to render services to another which he should recognize as necessary for the protection of a third person, is subject to liability to the third person for physical harm resulting from his

5

failure to exercise reasonable care to protect his undertaking, if: (a) his failure to exercise reasonable care increases the risk of such harm; (b) he has undertaken to perform a duty owed by the other to the third person; or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking. *Restatement (Second) of Torts* § 324A. This provision, however, does not aid Plaintiff. "In order to meet this requirement, the evidence must show the defendant did more than act, but through affirmative action *assumed an obligation or intended to render services for the benefit of another.*" *McGee*, 248 Kan. at 434, 806 P.2d 980, 983 (1991) (emphasis added.) Moreover, when a duty is based on the voluntary undertaking of a task, "[t]he extent of the undertaking defines the scope of the duty." *Sall v. T's, Inc.*, 281 Kan. 1355, 1364, 136 P.3d 471, 477 (2006) (citation omitted.) The facts in the complaint do not show that TBC undertook to render services for the benefit of the owner/operators relating to the enforcement of discrimination laws, nor does it allege facts showing that rendering such services increased the risk of franchisee employees such as Plaintiff being harassed or assaulted. No allegation is made here that TBC assumed the obligations of the owner/operators to manage, supervise, or discipline employees of the franchisee. Finally, the complaint does not allege that Plaintiff suffered harm because she relied upon TBC's undertaking of any such services. In sum, Plaintiff's allegations fail as a matter of law to show that TBC undertook to render services for the benefit of the owner/operators or employees of the Taco Bell such that TBC had a legal duty under § 324A to protect Plaintiff from being harassed or assaulted by employees of the franchisee. *Cf. Gray v. McDonald's USA, LLC*, 874 F. Supp. 2d 743, 752–53 (W.D. Tenn. 2012) ("Whether a franchisor assumes a voluntary duty to a franchisee's employee turns on whether the franchisor retains sufficient control over the day-to-day operations giving rise to the employee's injury."); *Hyde v. Schlotzsky's, Inc.*, 254 Ga. App. 192, 561 S.E.2d 876, 878 (2002) (franchisor's undertaking of periodic inspections and evaluations

of franchisee's hygiene practices did not amount to voluntary assumption of duty under § 324A to ensure compliance with hygiene regulations); *Castro v. Brown's Chicken and Pasta, Inc.*, 732 N.E.3d 37, 45-46 (Ill. App. Ct. 2000) (where franchisor did not control day-to-day operations of franchisee and did not mandate franchisee's security measures, franchisor did not voluntarily undertake duty under § 324A to provide security for franchisee).

A number of courts have held that a franchisor may be vicariously liable for the acts of its franchisee "if the former controls the particular instrumentality that caused harm to the plaintiff – in other words, if the relationship between them is that of principal and agent." *Vaught v. Chaudhry's Investment Group, Inc.*, No. 90-2585-KHV, 2010 WL 11627524, *2 (D. Kan. May 7, 2010). Based on the prevailing law in other jurisdictions, "Kansas courts would almost certainly apply general agency principles – including *respondeat superior* – if it were shown that a franchisor had control or a right of control over the daily operation of the specific aspect of the franchisee's business that allegedly caused harm." *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203-WEB, 2006 WL 8406742, *11 (D. Kan. June 13, 2006). *See also Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328, 341 (Wis. 2004). In the instant case, the complaint does not allege that TBC retained control over the daily supervision, management, and discipline of the franchisee's employees, including Vestal. *See id.* at 337-38 ("although franchise agreements typically impose detailed requirements on the franchisee's operations …, the existence of these contractual requirements does not mean that franchisors have a role in managing the day-to-day operations of their franchisees. To the contrary, the imposition of quality and operational requirements by contract suggests that the franchisor does not intervene in the daily operation and management of the independent business of the franchisee.") The complaint thus fails to show any basis for holding TBC vicariously liable for the alleged acts of the owner/operator Defendants or their

7

employees that resulted in harm to Plaintiff. *See Gray*, 874 F.Supp.2d at 752 ("No evidence indicates that McDonald's had any control over the hiring, firing, or discipline of Martin. McDonald's is therefore not vicariously responsible for Martin's tortious conduct."); *Bricker v. R&A Pizza, Inc.*, 804 F. Supp. 2d 615, 623 (S.D. Ohio 2011) (claim that franchisor negligently allowed sexual harassment by franchisee dismissed for failure to allege facts showing franchisor's control over the franchisee's business and the hiring, retention, and supervision of the alleged harasser.); *Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 90-91 (E.D. N.Y. 2000) (no franchisor liability where franchisee was responsible for hiring, firing, and training employees and making day-to-day decisions; franchisor's control was limited to ensuring uniform appearance and uniform quality in products.)

Plaintiff acknowledges that case law requires a finding that a franchisor retained control over the particular aspect of the business that caused harm before a franchisor will be found liable, and she asserts that "[t]his is precisely what Plaintiff has asserted in her Complaint." (Doc. 22 at 7.) But she points to no allegations in the complaint alleging control over daily personnel matters and the court finds none. Plaintiff also notes she has alleged that TBC "has a duty to provide rules regarding the operations, and oversee the operations of, the … restaurant franchises," as well as "a duty to ensure the Taco Bell franchised restaurants are safe working environments" and "a duty to disclose the known defects and risks of operating a Taco Bell restaurant." (*Id.* at 6-7.) These are prime examples of the type of conclusory allegations that are insufficient, under *Twombly* and *Iqbal*, to state a plausible claim. It is no answer to the question of whether Kansas recognizes a legal duty exists in a given set of circumstances to simply allege that TCB had such a duty. To be sure, the allegations in the complaint regarding Plaintiff's mistreatment by Vestal and Salas are serious; however, absent allegations that TBC had the type of control that courts have consistently

8

said is necessary for a franchisor to be liable in these circumstances, Plaintiff has failed to state a plausible claim for relief against TBC.

**IV. Conclusion**

IT IS THEREFORE ORDERED this 3rd day of September, 2019, that Defendant Taco Bell Corp.'s (TBC's) motion to dismiss (Doc. 17) is GRANTED. Count VII of the first amended complaint is DISMISSED for failure to state a claim upon which relief can be granted.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE